IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK S. CAMPBELL,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　)　　CASE NO. 05-4072-JPG
　　　　　　　　　　　　　　　　　　　)
THE CITY OF JOHNSTON CITY,　　　　　)
TONY L. KENDRICK, Johnston City　　　)
Police Officer, in his individual and　　　)
official capacity, and PAUL GREAR,　　　)
Johnston City Auxiliary Police Officer,　　)
in his individual and official capacity,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

## TRIAL MEMORANDUM

NOW COMES the defendant, Tony L. Kendrick, by and through his attorneys,

FEIRICH/MAGER/GREEN/RYAN, and for his trial memorandum states as follows:

## STATEMENT OF THE CASE

This is a civil suit brought by Plaintiff Mark S. Campbell against Defendants The City of

Johnston City, Tony L. Kendrick, a Johnston City Police officer, and Paul Grear, a Johnston City

Auxiliary Police officer, for violations of the Plaintiff's constitutional rights and the Civil Rights

Act of 1871, 42 U.S.C. § 1983. The Plaintiff also has brought state law claims of battery against

Defendant Johnston City and Defendant Kendrick and negligent hiring and retention against

Defendant Johnston City.

The Plaintiff alleges that on the evening of April 9, 2004, while under lawful arrest and in

the custody of Defendant Kendrick, Defendant Grear and the Johnston City Police Department,

Kendrick committed various acts of battery against the Plaintiff, and that Defendant Grear was

present but did not intervene to protect him from physical harm from Kendrick. The Plaintiff also

alleges that he requested medical attention for his injuries but was denied such attention. He further alleges that prior to this incident, Defendant Johnston City was aware that Kendrick had a propensity to be abusive and use excessive force, but deliberately ignored the evidence of such misconduct and continued to employ him as a police officer, negligently creating a risk of harm to persons such as the Plaintiff. The Plaintiff further alleges that it was the policy, practice, and custom of The City of Johnston City to ignore and acquiesce to the abusive actions allegedly committed by Kendrick.

Defendant Kendrick denies that he used excessive or unreasonable force against the Plaintiff but only used such force as was necessary to restrain him. Defendant Grear admits to being present during the time that Kendrick escorted Campbell into the Johnston City Police Department and during the time that Kendrick interviewed and booked him but denies that Campbell needed protection from Kendrick. These Defendants also deny that Plaintiff was injured or required medical attention for any injuries.

Defendants Kendrick and Grear assert that they have qualified immunity on the Civil Rights claims brought against them by the Plaintiff. With regards to the state law claim of battery, Defendants Kendrick and Grear have further asserted that they used only that force that was necessary to effectuate the arrest and processing of the plaintiff, as is allowed under Illinois law.

Defendant The City of Johnston City admits that Kendrick was hired as a police officer but denies that it was aware of prior complaints against Kendrick for abusive acts or excessive use of force. Defendant Johnston City also denies that it ignored or otherwise acquiesced to

2

allegedly abusive actions by Kendrick while he was employed as a police officer for The City of

Johnston City.

The issues to be decided in this matter are as follows:

A.   Did the defendant, Tony Kendrick, use force of an excessive nature in his handling of the plaintiff during the plaintiff's processing after his arrest?

B.   What is the standard that applies to claims that another officer failed to intervene to prevent harm to an arrestee?

C.   What is the standard that applies to the plaintiff's claims of denial of medical care?

D.   Does Tony Kendrick have qualified immunity from the plaintiff's claims of excessive use of force?

E.   Did Tony Kendrick commit battery, which is defined as an intentional unauthorized touching of another, upon Mr. Campbell?

**A.   DID THE DEFENDANT TONY KENDRICK USE FORCE OF AN EXCESSIVE NATURE IN HIS HANDLING OF THE PLAINTIFF DURING THE PLAINTIFF'S PROCESSING AFTER HIS ARREST?**

1.   <u>The standard of the 14th Amendment Substantive Due Process for pre-trial detainees, not the 4th Amendment, apply to determine whether an officer exercised excessive force upon an individual who has been arrested and is within custody but has not yet been brought before a judge.</u>

The plaintiff asserts that the controlling constitutional amendment in this situation, where

the plaintiff has been arrested and is in the custody of the officer but has not yet been brought

before a judge, is the 4th Amendment. The plaintiff asserts that the standards of *Graham v.*

*Connor*, 490 U.S. 386 (1989) apply. The Supreme Court in *Graham*, however, only addressed

the standard to be applied to excessive use of force cases during an arrest. The case goes no

farther. In fact the Supreme Court specifically stated: "Our cases have not resolved the question

whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. . . . After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" *Graham*, 490 U.S. at 395. Accordingly, because the plaintiff had already been arrested, the Graham standard and holding does not apply. Instead, the facts of this case fall within that portion of Graham that the court did not decide.

Despite the fact that the Supreme Court has not provided guidance in this situation, the plaintiff relies upon a footnote in the case of *Payne v. Hicks*, 161 F.3d 1030 (7th Cir. 1998) to support the position that the Fourth Amendment applies. That case is distinguishable because it involved an individual who was being held on a warrant. Under those circumstances the plaintiff was clearly a pre-trial detainee to which the 14th Amendment applied in his claims of excessive use of force, as the court so held. The court's discussion of the standard in other situations is, therefore, dicta and not binding. Furthermore, the footnote begins with the statement "[t]he Fourth Amendment covers only searches and seizures." The situation in our case involves neither a search or a seizure.

Furthermore, the case law cited by the Seventh Circuit in the footnote (*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998) and *Villanova v. Abrams*, 972 F.2d 792 (7th Cir. 1992)) to support a conclusion that the 4th Amendment excessive force standard might continue to apply after an individual has already been seized and arrested and is in police custody is also

distinguishable. The *Armstrong* case also involved claims made by a person being held pursuant to a warrant, who is clearly a pre-trial detainee. Accordingly, any comments regarding the standard applicable to persons after arrest (where the 4th Amendment standard would end) is dicta and not controlling.

In *Villanova*, the plaintiff was in jail awaiting trial on theft. Accordingly, he also was a pre-trial detainee to which the 14th Amendment would apply. The *Villanova* court further noted that a "seizure is complete upon arrest, and the Fourth Amendment falls away. . . . The deprivation of liberty brought about by confining the arrestee, or a person civilly committed, is tested under the due process clause." In support of this position the court cites to several U.S. Supreme Court cases. Thereafter, the court notes, however, that another Supreme Court decision appears to apply a 4th Amendment standard. As a result, the court undertakes to reconcile the two cases and in doing so makes the statement relied upon by *Payne*, namely "that the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." The court then notes that "[t]he cases are generally though not uniformly consistent with this distinction." Once again, this entire discussion is dicta because it is not relevant to the facts of the case or necessary for the court's determination of the proper standard to apply to a pre-trial detainee. It also is inconsistent with other Seventh Circuit and U.S. District courts in the Seventh Circuit which have applied the standards of the 14th Amendment substantive due process clause to arrestees who have not yet been brought before a judge, as was the plaintiff. *See Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir. 2005); *Tesch v. County of Green Lake*, 157 F.3d 465

(7th Cirt. 1998); *Jackson v. City of Chicago*, 2001 U.S. Dist. LEXIS 17631 (N.D. IL 2001);

*Medley v. Turner*, 869 F. Supp. 567 (N.D. IL 1994); *Quian v. Kautz*, 168 F.3d 949 (7th Cir.

1999); *Edwards v. May*, 718 F. Supp. 1379 (N.D. IL 1989); and *Proffitt v. Ridgway*, 279 F.3d

503 (7th Cir. 2002).

The only way the 4th Amendment, which governs searches and seizures, would apply

after an arrest is made and the suspect is placed into custody would be to recognize that there is a

"continuing seizure" until the suspect is brought before the judge. As pointed out by the court in

the case of *Riley v. Dorton*, 115 F.3d 1159 (4th Dist. 1996), although some circuits of the federal

courts have adopted such a doctrine, it is not consistent with the manner in which the Supreme

Court has interpreted the Fourth Amendment. The court in *Riley* explained:

> A review of the Supreme Court's basic jurisprudence reinforces our refusal to
> adopt the "continuing seizure" theory of the Fourth Amendment. Decades of
> Fourth Amendment precedent have focused on the initial deprivation of liberty. . .
> . The core of this Fourth Amendment jurisprudence thus addresses arrest – what
> constitutes an arrest, . . . what constitutes probable cause to make an arrest, . . .
> when probable cause must be found by a neutral magistrate, . . . which officials
> may issue a warrant, . . . what type of information is required to support a valid
> warrant, . . . and what force may be used during an arrest . . .. The remaining
> cases concentrate on identifying at what point, short of arrest, an individual may
> have suffered a deprivation of personal freedom implicating the Fourth
> Amendment . . . This body of Supreme Court precedent simply reflects the Fourth
> Amendment's core concerns. The Amendment establishes that "the right of the
> people to be secure in their persons . . . against unreasonable searches and
> seizures, shall not be violated." This guarantee does not stand alone, however, but
> is coupled with strictures on the issuance of warrants, indicating that the
> Amendment is directed at the arrest of persons and not the conditions of their
> custody. The requirements for securing a warrant have nothing to tell us about the
> conditions controlling subsequent detention. By its own terms, the Fourth
> Amendment thus applies to the "initial decision to detain an accused," . . ., not to
> the confinement after that decision has been made. Indeed, in defining the nature
> of "seizure" in the context of an arrest, the Supreme Court quoted *Thompson v.
> Whitman*, 85 U.S. 457, 18 Wall. 457, 471, 21 L.Ed. 897 (1874) for the proposition

that "[a] seizure is a single act, and not a continuous fact." . . . *Riley*, 115 F.3d at 1163. (Citations omitted).

The Fourth Circuit concluded by joining other Circuits, including the Seventh Circuit, in rejecting the "continuing seizure" concept. Instead the court concludes that the Fourteenth Amendment substantive due process standard for pre-trial detainees is to be applied to excessive force claims by arrestees.

As noted by the Fourth Circuit in *Riley,* the 7th Circuit has specifically rejected the concept of continuing seizure. *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989); *Reed v. City of Chicago*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996). In fact, the court stated that "[t]he applicability of the due process clause to police brutality occurring after the suspect is formally charged has rarely been questioned, and where he has been charged, or merely arrested, seems to us a detail of no constitutional significance." *Wilkins*, 872 F.2d at 195. This discussion is consistent with the court's statement in *Villanova* that "a seizure is complete upon arrest and the 4th Amendment falls away." Unlike the *Villanova* case, however, *Wilkins* involved an arrestee. Accordingly, the constitutional standard to apply to claims of excessive force by an officer during a time after an individual has been arrested and is in custody but before his has been brought before a judge is that a the Fourteenth Amendment substantive due process. The same standard applied to pre-trial detainees.

> 2. The Fourteenth Amendment substantive due process standard for determinations of whether a pre-trial detainee was subjected to excessive force.

The standard for excessive force claims against pretrial detainees under substantive due process of the Fourteenth Amendment has been found to be coextensive with such claims under

the Eighth Amendment. *Medley v. Turner*, 869 F. Supp. 567, 573-574 (N.D. IL 1994) *citing City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983), *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); *Swofford v. Marshall*, 969 F.2d 547 (7th Cir. 1992). "The Due Process Clause [of the Fourteenth Amendment] protects pre-trial detainees from the use of excessive force that amounts to punishment." *Crane v. Logli*, 992 F.2d 136, 139 (7th Cir. 1993) *quoting Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Under the Eight Amendment, the test for determining whether an inmate has suffered cruel and unusual punishment has two components, and objective and subjective component. *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir. 1994). "The objective component focuses on whether, in light of 'contemporary standards of decency,' the alleged deprivation was sufficiently serious. . . . The subjective component involves and inquiry into whether the officials acted with a sufficiently culpable state of mind." *Id.* As recognized by the court, in the excessive force context, these two inquiries, as a practical matter, collapse into a single inquiry. *Id.* "In excessive force cases, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999); *Thomas*, 20 F.3d at 301; *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998). Stated slightly differently, in order to sustain a claim for excessive force under the substantive due process clause of the Fourteenth Amendment the plaintiff must establish that "force was applied not 'in a good faith effort to maintain or restore discipline,' but rather that the force complained of was administered 'maliciously and sadistically to cause harm.'" *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993).

In applying this standard, the court has found that there are several factors that should be considered. These factors include "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619. "With regard to the last of these factors while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force. . . . Thus, not every push or shove by a prison guard [or officer] violates a prisoner's [or pre-trial detainee's] constitutional rights." *DeWalt*, 224 F.3d at 619-620; *Fillmore v. Page*, 358 F.3d 469, 504 (7th Cir. 2003); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998). "[T]he quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore*, 358 F.3d at 504; *Siglar*, 112 F.3d at 193; *Taylor*, 155 F.3d at 483.

3. The Fourth Amendment standard for determinations of whether excessive force was used in effectuating an arrest.

The U.S. Supreme Court has explicitly ruled that "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest [or] investigatory stop . . . should be analyzed under the Fourth Amendment's 'reasonableness' standard . . .." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). As the Court points out, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-1872, 104 L.Ed.2d 443 (1989).

In determining whether the force used by an officer was excessive three factors are considered: "1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the officers or others, 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Brawley v. Sapp*, 811 F. Supp. 172, 176 (D.Del 1993) *citing Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). These factors must then be considered in light of the information available to the officer and the circumstances under which he was operating.

As the Court stated in *Graham*,

> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." (Citations omitted).

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). This test, however, "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Therefore, officers are entitled to qualified immunity on claims of excessive force "unless application of the standard [set forth by the Court in *Graham*] would inevitably lead every reasonable officer in . . . [the officer in questions'] position to conclude the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).

**B. WHAT IS THE STANDARD THAT APPLIED TO CLAIMS THAT ANOTHER OFFICER FAILED TO INTERVENE TO PREVENT HARM TO AN ARRESTEE?**

In the case of *Medley v. Turner*, 869 F. Supp. 567 (N.D. IL 1994) the court recognized that the seminal case in the Seventh Circuit regarding the duty of an officer to intervene to prevent harm to another is *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972). In that case the court held: "'One who is given a badge of authority . . . may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.'" *Medley*, 869 F. Supp. at 571, *citing Byrd v. Brishke*, 466 F.2d 6. This responsibility applied to both supervisory and nonsupervisory officers. *Id.*

> In *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994), the Seventh Circuit recently summarized the scope of this responsibility: An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that: (1) excessive force was being used; (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. . . . Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possible conclude otherwise. . . . Thus, a failure to intervene is not always actionable. *Medley*, 869 F. Supp. at 572. *See also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

**C. WHAT IS THE STANDARD THAT APPLIES TO THE PLAINTIFF'S CLAIMS OF FAILURE TO PROVIDE MEDICAL CARE?**

Plaintiff's claims for failure denial of medical care is governed by substantive due process of the Fourteenth Amendment. *Edwards v. May*, 718 F. Supp. 1379, 1384 (N.D. IL 1989); *Estate of Moreland v. Dieter*, 395 F.3d 747, 758 (7th Cir. 2005); *see also Proffitt v. Ridgway*, 279 F.3d

503, 506 (7th Cir. 2002). As is true with claims of excessive force under the circumstances of this case, a claim of a denial of medical care for an arrestee/pre-trial detainee, covered by the Fourteenth Amendment, is evaluated under the same standard used for prisoners under the Eight Amendment. *Estate of Moreland*, 395 F.3d at 758; *Proffitt*, 279 F.3d at 506; *Higgins v. Correction Medical Services of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999). That standard requires the plaintiff to establish that there was a deliberate indifference to the plaintiff's serious medical needs. *Higgins*, 178 F.3d at 511; *Edwards*, 718 F. Supp. at 1384, *citing Estell v. Gamble*, 429 U.S. 97, 104-105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). For the plaintiff to establish this standard, he must satisfy a two-part test consisting of both an objective and subjective component. "[T]he plaintiff must show that 1) his condition was objectively serious, and 2) state officials acted with the 'requisite state of mind, deliberate indifference,' which is a subjective standard." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

"A condition is objectively serious if 'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Reed*, 178 F.3d at 852. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"The subjective element [the deliberate indifference prong of the two-part test] requires that the officials act with a 'sufficiently culpable state of mind." *Gutierrez*, 111 F.3d at 1369. "To be deliberately indifferent a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' . . . The official must know there is a risk and consciously disregard it. It is not

12

enough that he 'should have known' of the risk ." *Higgins*, 178 F.3d at 511; *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Accordingly, the second prong of the test, "deliberate indifference" includes both a knowledge element and a response element. The knowledge element requires that the plaintiff establish that an officer is subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and that the officer drew such an inference. The plaintiff must then establish that despite this knowledge, the officer "acted with reckless disregard toward the serious need by 'inaction or woefully inadequate action.'" *Reed*, 178 F.3d at 854.

### D. DOES TONY KENDRICK HAVE QUALIFIED IMMUNITY FROM THE PLAINTIFF'S CLAIMS OF EXCESSIVE USE OF FORCE?

The purpose of the defense of qualified immunity is:

> To enable public officials to exercise the powers of office without worrying that years later a court may decide that they were violating someone's constitutional rights. Public officials can't do their jobs without sometimes hurting people, and-- since they are not paid to be risk takers--might become unduly timorous if, every time their initiative caused an injury to someone, it would mean they had bought themselves a lawsuit prompted by the hope of persuading a court to make a novel application of some established constitutional right.

*Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987).

In order to determine if government officials performing discretionary functions within the course and scope of their employment are entitled to qualified immunity, it must be established that the alleged acts of Officer Kendrick violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Furthermore, as the Seventh Circuit Court of Appeals has stated, "It is

13

the plaintiff who <u>bears the burden</u> of establishing the existence of the allegedly clearly established constitutional right." (Emphasis added). *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). Therefore, to recover, the plaintiff must prove that his rights that the defendants have allegedly violated were "'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The question of whether the defendant is qualifiedly immune is a question of law for the court. *Mitchell v. Forsythe*, 472 U.S. 511 (1985). Although earlier courts construing the defense of qualified immunity applied both subjective and objective components, the law is now clear that the test is a wholly-objective one. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Once the specific actions of the defendants are ascertained in the case, the court must then objectively compare those facts to the law existing at the time of the alleged constitutional violation and in this manner determine whether the defendant's actions violated clearly established law. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). "Closely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir. 1985); *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985).

In addition to establishing that the officers' actions violated a clearly established constitutional right, it is critical to the examination to determine whether case law existed at the time of the occurrence which would lead the court "to conclude that reasonably diligent government officials would have known of the case law, related it to the situation at hand and

molded their conduct accordingly." *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985). "This means that...public officials are entitled to immunity unless it has been authoritatively decided that certain conduct is forbidden." *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987). Therefore, if the force used, if any, by the defendant force was applied in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm or that the plaintiff did not have a serious medical condition that required medical attention, Officer Kendrick is qualifiedly immune from suit.

### E. DID OFFICER KENDRICK COMMIT BATTERY, WHICH IS DEFINED AS AN INTENTIONAL UNAUTHORIZED TOUCHING OF ANOTHER, UPON THE PLAINTIFF?

Battery is defined as the intentional unauthorized touching of another. *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996, ___, 520 N.E.2d 1085, 1094, 117 Ill. Dec. 734, 743 (4th Dist. 1988); *Mink v. University of Chicago*, 460 F. Supp. 713, 717-718 (N.D. Ill. 1978); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622 (7th Cir. 1989); *Pechan v. DynaPro, Inc.*, 251 Ill. App. 3d 1072, ___, 622 N.E.2d 108, 117, 190 Ill. Dec. 698, 707 (2d Dist. 1993); *Glowacki v. Moldtronics, Inc.*, 264 Ill. App. 3d 19, ___, 636 N.E.2d 1138, 1140, 201 Ill. Dec. 706, 708 (2d Dist. 1994); 720 ILCS 5/12-3. In order for the defendants to be liable for battery, they must have done some affirmative act which was intended to cause an unpermitted contact." *Mink*, 460 F. Supp. at 718; *Schroeder*, 875 F.2d at 622; *Pechan*, 251 Ill. App. 3d at ___, 622 N.E.2d at 117, 190 Ill. Dec. at 707; *Glowacki*, 264 Ill. App. 3d at ___, 636 N.E.2d at 1140, 201 Ill. Dec. at 708.

The definition of battery requires several elements. First, the plaintiff must establish that the defendants did an affirmative act with the intention of causing harmful or offensive contact to the person of the plaintiff. *See Mink*, 460 F. Supp. at 718; *Schroeder*, 875 F.2d at 622; *Pechan*,

251 Ill. App. 3d at ___, 622 N.E.2d at 117, 190 Ill. Dec. at 707; *Glowacki*, 264 Ill. App. 3d at ___, 636 N.E.2d at 1140, 201 Ill. Dec. at 708. Secondly, and more importantly, the plaintiff must establish that the contact was unpermitted or, in other words, unauthorized. If the contact was permitted or authorized, no battery was committed. *See Mink*, 460 F. Supp. at 718; *Schroeder*, 875 F.2d at 622; *Pechan*, 251 Ill. App. 3d at ___, 622 N.E.2d at 117, 190 Ill. Dec. at 707; *Glowacki*, 264 Ill. App. 3d at ___, 636 N.E.2d at 1140, 201 Ill. Dec. at 708.

FEIRICH/MAGER/GREEN/RYAN

By_____ /s/ John C. Ryan _____
John C. Ryan
jryan@fmgr.com

FEIRICH/MAGER/GREEN/RYAN
2001 West Main St.
P.O. Box 1570
Carbondale, IL 62903
Tele:   (618) 529-3000
Fax:    (618) 529-3008
G:\KLJ\CAMPBELL\trial memo.wpd

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 20, 2006, the attached Motion In Limine was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Michael W. Maurizio
Michael W. Maurizio & Associates
1903 W. Main Street
P.O. Box 1849
Marion, IL 62959
mmaurizio@mauriziolaw.com

Mr. Richard J. Whitney
Speir & Whitney
3200 Fishback Road
Milwood Executive Suites
Carbondale, IL 62901
rwhitney@mychoice.net

Mr. Joseph Bleyer
Bleyer and Bleyer
601 West Jackson Street
P.O. Box 487
Marion, IL 62959-0487
jableyer@bleyerlaw.com

Mr. K. Rockne Bleyer
Bleyer and Bleyer
601 West Jackson Street
P.O. Box 487
Marion, IL 62959-0487
kbleyer@bleyerlaw.com

and I hereby certify that on July 20, 2006, I mailed by U.S. Postal Service the document to the following non-registered counsel:

None

Dated this 20th day of July, 2006.

FEIRICH/MAGER/GREEN/RYAN

By_____s/ John C. Ryan_____
        John C. Ryan

FEIRICH/MAGER/GREEN/RYAN
2001 West Main St.
P.O. Box 1570
Carbondale, IL 62903
Tele: (618) 529-3000
Fax: (618) 529-3008
e-mail: jryan@fmgr.com
G:\KLJ\CAMPBELL\trial memo.wpd